UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Karin K. Wandersee,

    Plaintiff,

v.                                              Civil No. 10-4159 (JNE/AJB)
                                                      ORDER

Farmers State Bank of Hartland,

    Defendant.

---

John A. Fabian, III, Esq., and David H. Redden, Esq., Fabian May & Anderson, PLLP, appeared for Plaintiff Karin K. Wandersee.

Kelly C. Dohm, Esq., Melchert Hubert Sjodin, PLLP, appeared for Defendant Farmers State Bank of Hartland.

---

Plaintiff Karin Wandersee sued Defendant Farmers State Bank of Hartland (FSB) alleging violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., and the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363A.01, et seq., to include discrimination, retaliation and coercion. Wandersee alleges FSB engaged in discriminatory and retaliatory conduct by terminating her because she suffers from Multiple Sclerosis (MS). The matter is before the Court on Wandersee's motion for partial summary judgment on her coercion claims under 42 U.S.C. § 12203(b) and Minn. Stat. § 363A.15, and FSB's cross-motion for summary judgment on all counts of the Complaint.

## I.  BACKGROUND

FSB hired Wandersee on July 30, 2001 as the lead loan processor at the Hartland branch of the bank in a full-time salaried position. In 2006, Wandersee was promoted and took on additional duties as FSB's Compliance Officer.

Wandersee was diagnosed with MS in 2004, and she promptly informed FSB of her medical condition. In December 2006, she experienced a severe relapse that caused fatigue, impaired mobility, balance problems, discomfort, and necessitated more frequent medical appointments.

In the summer of 2007, Wandersee formally requested reasonable accommodations to include the ability to attend medical appointments during normal banking hours, flexible hours with the opportunity to work evenings and weekends, a later start time, and occasional rest breaks. Upon the request of FSB's president, Nancy Skophammer, Wandersee's neurologist wrote a letter, dated February 28, 2008, which confirmed that Wandersee was diagnosed with MS. It stated that significant fatigue is a symptom, but confirmed that Wandersee could work a 40-hour work week.

After failing to agree on reasonable accommodations on their own, the parties participated in mediation in April 2008. The resulting agreement provided that 1) Wandersee would remain a salaried employee and work flexible hours to include days, evenings, and weekends to average 40 hours per week, and 2) she would have a three-month window in which to make up any time missed for medical appointments before she would be required to use her paid time off.

On October 31, 2008, the parties met to reconsider Wandersee's accommodations. FSB stated that it wanted to change Wandersee from a salaried employee to an hourly employee. It also stated that it needed more medical information to continue the accommodations and to ensure Wandersee could perform her essential job functions. In order to obtain the medical information it desired, FSB requested Wandersee's signature on several documents. Wandersee

objected to the scope of the requested medical inquiry and refused to sign any of the medical releases.

Over the next couple months, the parties' attorneys exchanged numerous e-mail messages and letters regarding the appropriate wording of any medical inquiries. Wandersee characterizes much of the correspondence from FSB's attorney as threatening and coercive. In the end of December 2008, Wandersee sent her own list of questions to her neurologist and his response was provided to FSB on January 19, 2009. FSB claims that the January 19 letter was nonresponsive to the inquiries it requested, and it ceased attempting to obtain additional medical information. It changed Wandersee from a salaried to an hourly employee. FSB allowed Wandersee to work flexible hours or miss work for appointments, but she could only work overtime up to 10 hours per week to cover any missed time. Any work outside of normal hours had to be preapproved by her supervisor, David Courey. On February 21, 2009, Wandersee filed a charge of discrimination with the EEOC.

As the compliance officer, Wandersee had the lead on the bank's 2010 Federal Deposit Insurance Corporation (FDIC) examination. Wandersee requested to work after hours several times in December 2009 to prepare for the exam. Some of these requests were granted. The exam began on January 27, 2010, and the final results were presented on February 10, 2010. The exam resulted in the same rating FSB received in 2007. The 2010 exam found three fewer "Significant Violations," but more violations overall than the 2007 FDIC examination. Immediately following the FDIC review on February 10, 2010, Skophammer and her management team met with Wandersee and terminated her. FSB did not provide any specific reasons for termination at that time. Wandersee was replaced as Compliance Officer by a salaried employee who was not disabled.

## II.  DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Claims under the ADA and MHRA are analyzed using the same standard. *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 n. 3 (8th Cir. 2003); *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 711 n.5 (8th Cir. 2003). Thus, the Court considers Wandersee's ADA and MHRA claims together.

### A.  Discrimination claims

FSB moves for summary judgment on Wandersee's discrimination claims under the ADA and MHRA. Both Acts prohibit discrimination against a qualified employee with a disability because of that employee's disability. 42 U.S.C. § 12112(a); Minn. Stat. § 363A.08, subd. 2. A plaintiff may prove discrimination either through direct evidence or under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1021 (8th Cir. 1998). Direct evidence is: "Any credible evidence tending to establish that an employer acted adversely to an individual 'on

4

account of' h[er] disability." *Lowery v. Hazelwood Sch. Dist.*, 244 F.3d 654, 658 (8th Cir. 2001). Wandersee claims to have direct evidence of discrimination, but FSB argues the case should be analyzed under the burden-shifting framework of *McDonnell Douglas*. Assuming for purposes of FSB's motion that it is correct that Wandersee cannot present evidence of direct discrimination, the Court proceeds under the *McDonnell Douglas* framework. "Under this framework, a plaintiff bears the burden of establishing a prima facie case showing [s]he (1) had a disability within the meaning of the ADA; (2) was qualified, with or without a reasonable accommodation, to perform the essential job functions of the position in question; and (3) suffered an adverse employment action because of h[er] disability. The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's actions. If the employer articulates such a reason, the burden returns to the employee to show the employer's justification is a pretext." *Rehrs v. Iams Co.*, 486 F.3d 353, 356 (8th Cir. 2007) (citations omitted).

### 1. Prima facie case

For present purposes, FSB concedes that Wandersee has a disability within the meaning of the ADA and that termination is an adverse employment action. But disputed material facts surrounding Wandersee's essential job functions and the causation element prevent the Court from making a determination as a matter of law.

The ADA describes "essential functions," stating that "[f]or the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if any employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions." 42 U.S.C. § 12111(8). Accordingly, the United States Court of Appeals for the Eighth Circuit gives deference to the employer's valuation. *Alexander v. Northland Inn,* 321 F.3d

723, 727 (8th Cir. 2003). Evidence to consider in this determination may include: "(1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the current work experience of incumbents in similar jobs." *Heaser v. Toro Co.*, 247 F.3d 826, 831 (8th Cir. 2001). "The employer's judgment, however, although highly probative, is merely evidence and is not conclusive. Rather, we also emphasize the results upon the employer's business of eliminating that job function; 'the consequence of not requiring [plaintiff] to perform these functions demonstrates that they are, indeed, essential.'" *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 786 (8th Cir. 2004) (quoting *Dropinski v. Douglas Cnty.*, 298 F.3d 704, 709 (8th Cir. 2002)).

The parties dispute the essential functions of Wandersee's position. FSB argues that Wandersee could not perform the essential functions of her job because she could not be present at the bank during all normal banking hours. *See Rios-Jimenez v. Principi*, 520 F.3d 31, 42 (1st Cir. 2008) ("At the risk of stating the obvious, attendance is an essential function of any job."). The record does not provide any evidence that Wandersee's essential job functions were established prior to her request for reasonable accommodations in the summer of 2007. The job description created by FSB in 2008, testimony of other employees, and correspondence from Wandersee's supervisors all arise after the parties' conflict began. FSB also points to its employee handbook that was in effect prior to the summer of 2007. Nothing in the handbook's discussion of the policies regarding "Hours of Work," "Attendance and Punctuality," or "Rest Breaks and Meal Breaks" states that an employee's scheduled hours are the same as the hours the bank is open to customers. Nor does the handbook specify the schedule for a salaried employee

in Wandersee's position. Instead, it states that "the President will determine the normal workday schedule of hours for employees." (Dohm Aff., Ex. G, at 11, Mar. 9, 2012). Here, nothing in the record indicates that Skophammer established Wandersee's "normal workday schedule" prior to her request for accommodations. Wandersee points to evidence in the record that indicates portions of her job could be performed outside of normal banking hours. For a time, and with FSB's permission, she worked on weekends and in the evenings. FSB also provided her a laptop so that she could work from home. Wandersee argues these actions demonstrate that presence at the bank during banking hours was not an essential function of her job. Even giving due deference to FSB's job characterization, the Court cannot find as a matter of law that Wandersee was required to work specific hours at the bank as an essential function of her job.

Under the *McDonnell Douglas* framework, a plaintiff proves causation by creating an inference of discrimination. An inference of discrimination arises where there is some evidence—most commonly evidence demonstrating disparate treatment—of a causal connection between a plaintiff's disability and the adverse employment action. *Allen v. Interior Const. Servs., Ltd.*, 214 F.3d 978, 982 (8th Cir. 2000).[1] But evidence of disparate treatment is not the exclusive means to establish an inference of discrimination, and "any credible evidence tending to establish that an employer acted adversely to an individual 'on account of' h[er] disability will suffice." *Id.* Wandersee alleges numerous statements and acts by Skophammer and Courey establish an inference of discrimination. For example, Skophammer testified at her deposition that she did not want Wandersee working after hours at the bank for security reasons but then

---

[1] Wandersee argues disparate treatment to prove a causal connection between her disability and her termination. *See Lowery*, 244 F.3d at 659. In order to support an inference of discrimination through disparate treatment, Wandersee must show that she was treated less favorably than similarly situated employees who are not disabled. *Id.* She argues that she was treated differently than the non-disabled employee that replaced her. But Wandersee does not offer proof that her replacement, or any other employee, was similarly situated.

admitted that she allows several other employees to occasionally work after hours. Skophammer explained: "As per Ms. Wandersee, who had already documented that she had an impairment that required numerous accommodations, I guess I felt that she was a more vulnerable adult than the males that stayed to work after hours." (Skophammer Dep. Vol. III, 591:2-8, Jan. 3, 2012). Another example of Wandersee's proffered direct evidence is a September 2009 e-mail exchange between Skophammer and Courey poking fun at Wandersee's need to miss work. Wandersee also cites an e-mail from Courey denying one of her requests to work late saying "[i]t has been your choice to schedule your appointments in a manner in which you do, which affects regular bank hours during the week." (Courey Dep. Ex. 19, May 27, 2011). Wandersee argues that these, as well as numerous other communications from FSB, establish an inference of discrimination. Wandersee has presented sufficient evidence to create a genuine issue of fact as to whether FSB fired her because she had MS. *See Miners v. Cargill Commc'ns, Inc.*, 113 F.3d 820, 824 (8th Cir. 1997).

### 2. Legitimate non-discriminatory reason and pretext

FSB claims that it terminated Wandersee because she allowed the bank's compliance management system to decline over time, culminating in a less than favorable 2010 FDIC exam. Wandersee challenges FSB's proffered reason for termination as pretext. A plaintiff "may prove pretext either directly by showing that her employer was more likely motivated by a discriminatory reason or indirectly by showing that her employer's explanation is unworthy of credence." *Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1108 (8th Cir. 1998).

> [A] plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [disability] was a determinative factor in the adverse employment decision. The second part of the test sometimes may be satisfied without additional evidence where the

8

>overall strength of the prima facie case and the evidence of pretext "suffice to show intentional discrimination." The focus, however, always remains on the ultimate question of law: whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff because of the plaintiff's [disability].

*Rothmeier v. Inv. Advisors, Inc.*, 85 F.3d 1328, 1336-37 (8th Cir. 1996)).

Wandersee argues the FDIC exam is not a legitimate reason for her termination, because the bank received the same overall rating in 2007 and 2010, and the number of "Significant Violations" decreased from 2007 to 2010. FSB relies on deposition testimony of the primary examiner where—when pressured to name one responsible employee—he named Wandersee as the Compliance Officer. Wandersee, however, points to other portions of the examiner's testimony where he faults the bank's board for lack of supervision. Wandersee also raises an issue of lack of cooperation from her supervisor and other bank employees in preparing for the exam. Moreover, Wandersee offers a list of statements, e-mails, and actions by Skophammer and Courey that indicate they were already considering termination by the summer of 2009—well before the FDIC exam. Examples of evidence provided by Wandersee include e-mails from Courey to Skophammer asking whether FSB should spend money to send Wandersee to a training conference, and if he should develop a goal list for her or if that would be a waste of time "if this is a done deal." (Skophammer Dep. Vol. III Ex. 91, Jan. 3, 2012). A June 2009 e-mail from Skophammer explains that she was distributing some of Wandersee's tasks "so when this is settled and she leaves at that point then we are somewhat prepared." (Kenison Dep. Ex. 1, Oct. 25, 2011). Issues of material fact surround FSB's proffered reason for termination.

### 3. Failure to reasonably accommodate

A claim of disability discrimination can be based on a failure to reasonably accommodate the known disability of an employee. An employer has a duty to provide a reasonable

accommodation to a disabled employee unless that accommodation would impose an undue hardship on the employer's business. 42 U.S.C. § 12112(b)(5)(A); Minn. Stat. § 363A.08, subd. 6. Wandersee also argues that FSB failed to reasonably accommodate her by refusing to allow her to work a flexible schedule. *See* 42 U.S.C. § 12111(9)(B) (listing part-time or modified work schedules as examples of reasonable accommodations). FSB responds that a flexible schedule imposes an undue burden as it would prevent Wandersee from performing the essential functions of her job—namely being present at the bank during normal banking hours. This argument turns on a determination of the essential functions of Wandersee's job. As discussed, the essential functions of Wandersee's job are disputed material facts. Thus, the Court cannot determine whether FSB failed to reasonably accommodate Wandersee.

      **B.**     **Retaliation and reprisal claims**

Employers are prohibited from retaliating against an employee who asserts her rights under the ADA or MHRA. 42 U.S.C. § 12203(a); Minn. Stat. § 363A.15. To defeat summary judgment, Wandersee must produce either direct evidence of retaliation, or create an inference of retaliation under the *McDonnell Douglas* burden-shifting framework. *Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 912 (8th Cir. 2011). To prove a prima facie case of retaliation under *McDonnell Douglas*, a plaintiff must show: "1) [s]he engaged in protected conduct; 2) a reasonable employee would have found the challenged action materially adverse; and, 3) the materially adverse action was causally linked to the protected conduct." *Carrington v. City of Des Moines,* 481 F.3d 1046, 1050 (8th Cir. 2007). If Wandersee makes a prima facie case, then FSB must provide a legitimate reason for the adverse action. *Id.* The burden then shifts back to Wandersee to show FSB's justification was pretext for retaliation. *Id.*

Wandersee alleges numerous protected activities and adverse actions as a result of those activities. The law is clear that requesting reasonable accommodations for a disability is a protected activity. *See Kirkeberg v. Can. Pac. Ry.*, 619 F.3d 898, 907–08 (8th Cir. 2010); *Hoover v. Norwest Private Mortgage Banking*, 632 N.W.2d 534, 549 (Minn. 2001). FSB does not dispute that Wandersee engaged in a protected activity when she filed her complaint with the EEOC or that termination is an adverse employment action. But it argues that there is no causal connection between her termination and her protected activity. FSB argues it terminated Wandersee for a legitimate reason—her performance as the Compliance Officer leading to deficiencies in the 2010 FDIC exam. It points to the fact that she was terminated immediately following the FDIC review, not nearly a year before when she filed her EEOC complaint.

In addition to the evidence discussed in relation to the discrimination claim, Wandersee presents examples of statements and actions by FSB that she argues indicate a retaliatory motive. She points to Skophammer's admission that her relationship with Wandersee deteriorated after the parties entered into negotiations regarding reasonable accommodations. Wandersee also points to Skophammer's deposition testimony that "obviously I asked them [referring to three other bank employees] for information. We were involved in an EEOC situation. I needed to build a case." (Skophammer Dep. Vol. II 397: 10-12, Oct. 20, 2011). In Wandersee's deposition, she testified that she was told her lending authority was revoked because she could not be trusted after filing the EEOC action. Drawing reasonable inferences in favor of Wandersee, FSB's actions could be viewed as retaliation for Wandersee requesting reasonable accommodations and filing an EEOC complaint.

In rebuttal to FSB's proffered legitimate reason for termination, Wandersee offers a list of statements, e-mails, and actions by Skophammer and Courey indicating that by the summer of

2009—after the EEOC action had been filed but before the 2010 FDIC exam—FSB already assumed that Wandersee would be terminated in the near future. The timing of events in February 2009 are relevant to an inference of retaliation. *See Peterson v. Scott Cnty.*, 406 F.3d 515, 524 (8th Cir. 2005) *abrogated by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (abrogated on differed grounds) ("An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation." (internal citations omitted)). In a February 2, 2009 letter, Wandersee indicated her intent to file a discrimination lawsuit. On February 17, 2009, FSB gave Wandersee a memorandum setting forth various performance deficiencies, and Skophammer and Courey followed up two days later talking to Wandersee about improving her job performance. On February 21, 2009, Wandersee filed a charge of discrimination with EEOC. FSB eliminated Wandersee's lending authority on February 27, 2009. The facts taken in a light most favorable to Wandersee could plausibly create an inference of retaliation and thus her retaliation claim survives FSB's motion for summary judgment.

  **C.** **Coercion and interference claims**

Both parties move for summary judgment on Wandersee's coercion claims. Wandersee's claims under 42 U.S.C. § 12203(b) and Minnesota Statutes § 363A.15 cannot be determined at the summary judgment stage. In order to succeed on a claim of coercion Wandersee must show that 1) she engaged in a protected activity; 2) she suffered an adverse action; and 3) there was a causal link between the two. *Brown v. City of Tucson*, 336 F.3d 1181, 1192 (9th Cir. 2003). Wandersee argues that she satisfies the second and third elements through direct evidence. *See Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1034 (8th Cir. 2007). She points to a

November 5, 2008 letter from FSB that threatened "disciplinary action against Ms. Wandersee, up to and including termination of her employment" if she did not provide the executed Medical Authorization by close of business on November 7, 2008. (Skophammer Dep. Vol. I Ex. 51, May 25, 2011). The letter expressly ties a threat of disciplinary action or termination to Wandersee's prompt return of an executed Medical Authorization and so satisfies the second and third elements of her coercion claim. But Wandersee's refusal to allow what she viewed as an overly intrusive medical inquiry must first qualify as a protected activity under the ADA and MHRA. If the medical inquiry was overly intrusive, her refusal likely could qualify as a protected activity. *See* 29 C.F.R. § 1630.14(b); EEOC, No. 915-002, Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act (ADA), No. 10 (2000), available at http://www.eeoc.gov/policy/docs/guidance-inquiries.html (hereinafter EEOC Guidance). But an employer is permitted to inquire into an employee's medical condition when it has a reasonable belief, based on objective evidence, that an employee's ability to perform her essential job functions will be impaired by a medical condition.[2] *See Conroy v. N.Y. State Dept. of Corr. Servs.*, 333 F.3d 88, 97 (2d Cir. 2003); EEOC Guidance, at No. 5. The challenged inquiry here related to Wandersee's ability to perform her essential job functions. As previously discussed, the parties do not agree on her essential job functions. Thus, the court cannot determine as a matter of law whether the requested medical inquiry exceeded its necessary scope.

---

[2] An employer may make medical inquires of an employee in order to determine reasonable accommodations and if the employer has a reasonable belief that the employee poses a threat due to a medical condition. *See* 42 U.S.C. § 12112(d)(4); 29 C.F.R. § 1630.14(c); *see also Conroy v. N.Y. State Dept. of Corr. Servs.*, 333 F.3d 88, 97 (2d Cir. 2003). But neither of those reasons is applicable here. FSB's requested medical inquiries went beyond Wandersee's requested accommodations, and there is no evidence in the record that Wandersee was a threat.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Plaintiff's Motion for Summary Judgment [Docket No. 87] is DENIED.

2. Defendant's Motion for Summary Judgment [Docket No. 93] is DENIED.

Dated:  May 9, 2012

                                                s/ Joan N. Ericksen
                                               JOAN N. ERICKSEN
                                               United States District Judge